## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| YUZHAO JIN, | |
|        Plaintiff, | Case no. 1:24-CV-5247 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A" | |
|        Defendants. | |

## EMERGENCY MOTION TO INTERVENE

Pursuant to Federal Rules of Civil Procedure 24 and Judge Jorge L. Alonso's Chamber Rules, Hangzhou Hengbo Trading Co., Ltd ("Hangzhou"), by and through its undersigned counsel, hereby moves this Court for an emergency order allowing Hangzhou to intervene in this matter to protect its interests. Given the timing of the pending motions (Dkts 3 & 4) and Hangzhou's recognition of its potential involvement in the matter (as discussed below), Hangzhou files this Motion to Intervene as an emergency motion because a delay in hearing the motion would cause it serious harm. Hangzhou's undersigned counsel orally notified the Judge's Courtroom deputy of this motion at 3:45 pm this afternoon, which has been served on Plaintiff Yuzhao Jin's counsel. Accordingly, Haghzhou has satisfied the Judge Alonso's requirements for Emergency Motions.

Intervention is governed by Rule 24, which provides that "[o]n timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately

represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24 further states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).

While the identities of the defendants in the above-captioned action are currently sealed, *see* Dkt. 1-2; Dkt. 2, Hangzhou received multiple communications from Chen Jian—Plaintiff Yuzhao Jin's representative—indicating that Hangzhou was included as a named defendant. *See* Li Decl., Ex. 1 (June 27, 2023 WeChat message chain). Accordingly, Hangzhou has a good faith reason to believe that it was named as a defendant in the sealed Schedule A to Plaintiff's complaint.

Even if Hangzhou is not specifically named, it believes that Plaintiff may be targeting retailers selling Hangzhou's baby bathtub product through Amazon. Shutting down the retailers of Hangzhou's products will directly harm Hangzhou via lost revenue.

To protect its interests, especially considering the Court is conducting a hearing on Plaintiff's motion for temporary restraining order on July 3, 2024—the day after filing of this motion—Hangzhou seeks emergency leave to intervene and provide the following substantive arguments in opposition to Plaintiff's pending (A) motion to seal and (B) motion for temporary restraining order, which arguments Hangzhou sets forth below for consideration if the Court grants this emergency motion to intervene.

## OPPOSITION TO MOTION TO SEAL

Plaintiff's sole basis for its Motion to Seal is that "[s]ealing this portion of the file is necessary to prevent the Defendants from learning of these proceedings prior to the execution of the temporary restraining order" because "[i]f Defendants were to learn of these proceedings prematurely, the likely result would be the destruction of relevant documentary evidence and the hiding or transferring of assets to foreign jurisdictions." Dkt. 3 at 1. While Plaintiff was seeking

VP/#67008026.1

extraordinary confidentiality from this Court, it was already notifying Hangzhou of these proceedings and even sent it a copy of the complaint, without any request or expectation of confidentiality. *See* Li Decl., Ex. 1 (June 27, 2023 WeChat message chain). Consequently, Plaintiff's only basis to demand that this Court seal the identities of the Defendants and other pleadings was completely undermined by Plaintiff's own act of providing Hangzhou with notice. Accordingly, Hangzhou respectfully requests the Court deny Plaintiff's Motion to Seal, at least with respect to Hangzhou and its retailers.

## OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff's TRO Motion fails for at least four reasons: (1) Plaintiff alerted Hangzhou of this Schedule A proceeding, which defeats Plaintiff's sole basis identified for the exigencies of this *ex parte* TRO making it procedurally defective for failing to comply with Fed. R. Civ. P. 65(b)(1); (2) Plaintiff's attorneys are neither Illinois-licensed attorneys nor admitted pro hac vice and are thus engaging in the unauthorized practice of law making these proceedings legally invalid; (3) Plaintiff is unlikely to ultimately prevail on the merits because the patent at issue is likely invalid based on the prior art that Hangzhou was already able to identify in the days since it learned about this action; and (4) Plaintiff's complaint (Dkt. 1) fails to state a plausible claim for patent infringement. Therefore, Hangzhou respectfully requests the Court deny the TRO Motion.

## I.      BACKGROUND.

On June 24, 2024, Plaintiff commenced this action asserting a claim for patent infringement against multiple defendants whose names are currently under seal. Dkt. 1. According to Plaintiff, the defendants "go to great length to conceal their identifies and often use fictitious names and addresses to register and operate their network of Defendant Internet Stores." Dkt. 1 at ¶ 12. Further, Plaintiff alleges that the defendants "without any authorization or license from Plaintiff,

have knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that infringe directly and/or indirectly the Asserted patent, and continue to do so via the Defendant Internet Stores." Dkt. At ¶ 15. Consistent with that of a Schedule A complaint, Plaintiff alleges that Plaintiff "is very familiar with the practices of such online counterfeiters and infringers. Such tactics include shutting down or abandoning their internet stores only to open another internet store offering the same infringing products under a different name, making enforcement of Plaintiff's intellectual property rights difficult in the extreme." Dkt. 1 at ¶ 13.

On this basis, Plaintiff filed its TRO Motion under seal and without notice to Hangzhou (and any other defendants) in order to presumably prevent Hangzhou and its Amazon retailers from selling the bathtubs and to freeze the Amazon accounts of Hangzhou's retailers. *See, e.g.,* Dkt. 5 at 1 ("Plaintiff is requesting temporary *ex parte* injunctive relief. Sealing this portion of the file is necessary to prevent the Defendants from learning of these proceedings prior to the execution of the temporary restraining order").

Despite these purported fears, Plaintiff alerted Hangzhou of these proceedings and even sent a copy of the operative complaint to Hangzhou on June 27, 2024. *See* Li Decl.,[1] Ex. 1. Up to Plaintiff's communication, Hangzhou had no idea that it (or its retailers) was potentially named as defendants in this lawsuit. Thus, Plaintiff's sole basis for the necessity of the Motion to Seal and TRO Motion was utterly undermined by Plaintiff's own act of providing notice to Hangzhou.

---

[1] The Declaration of Fei Li is filed simultaneously with this opposition in support of Hangzhou's Motion to Intervene.

Even further, neither of Plaintiff's attorneys of record, Stevenson Moore and Hao Ni, are licensed to practice law in Illinois.[2] There is nothing in the docket to indicate that they have been admitted by the Court to appear pro hac vice. And there is no indication in the pleadings or the docket that any Illinois lawyer is appearing on behalf of the Plaintiff in these proceedings. In any event, none of the public pleadings appear to have been reviewed let along signed by a member of the Illinois Bar.

## II.    LEGAL AUTHORITY.

### A.  Plaintiff Has No Procedural Basis for Its Ex Parte TRO Motion.

Federal Rule of Civil Procedure 65(b)(1) gives the "strict procedural requirements" for temporary restraining orders issued without notice:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) The movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The purpose of a temporary restraining order issued without notice is to "preserve the status quo pending a hearing." *See Am. Can. Co. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984). Such an order should be granted only in "extremely limited" circumstances because of the presumption in favor of court action only after "reasonable notice and an opportunity to be heard." *Id.* at 321-22.

---

[2] The signature block on the Complaint (Dkt. 1 at page 9) list only Texas Bar Numbers for the signatories to the Complaint. Moore and Ni's firm bios provide no indication that either are licensed to practice law in Illinois or the Northern District of Illinois. *See* https://nilawfirm.com/staff/steve-moore/; https://nilawfirm.com/staff/hao-ni/. The ARDC of the Supreme Court of Illinois has a record of either of them being licensed to practice in Illinois.

VP/#67008026.1

Thus, at the outset, Plaintiff's TRO Motion must fail for at least two procedural reasons:

**First**, Plaintiff's sole basis for filing its TRO Motion without notice is to prevent the defendants from learning of this proceeding prior to the execution of the TRO so they cannot avoid "the Court's power to grant relief" by shutting down their "Internet Stores" and reopening under a different name. *See, e.g.*, Dkt. 5 at 1. But this purported concern is moot considering Plaintiff already alerted at least Hangzhou of these proceedings on June 27, 2024, stating that Hangzhou was named as a defendant in this action. *See* Li Decl., Ex. 1. Consequently, Plaintiff has defeated its sole basis for the exigencies of this *ex parte* TRO.

**Second**, in violation of Fed. R. Civ. P. 65(b)(1)(A), the Complaint was neither verified nor was any affidavit filed that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." In further violation of the rules, the docket is conspicuously absent of any affidavit from Plaintiff's attorneys certifying that it made any efforts to give notice or the reasons that notice should not be required. Fed. R. Civ. P. 65(b)(1)(B). Based on the facts currently known such statements would have been untrue. As such, Plaintiff's TRO motion is procedurally defective and should be denied.

### B. Plaintiff's Attorneys Are Engaging in the Unauthorized Practice of Law.

Because Plaintiff's attorneys are not licensed to practice law in Illinois or the U.S. District Court for the Northern District of Illinois, they are engaging in the unauthorized practice of law and any of their actions in the above-captioned matter is a legal nullity. *People ex. rel., Illinois State Bar Association v. Schafer*, 404 Ill. 45, 50 (1949) (holding that the practice of law as giving advice or services "when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill"); Ill. Supreme Ct. Rule 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or

assist another in doing so"); *see also* Ill. Supreme Ct. Rule 5.5 cmt. 1 ("A lawyer may practice law only in a jurisdiction in which the lawyer is authorized to practice"). Accordingly, dismissal of this action is the appropriate remedy. *See Applebaum v. Rush Univ. Med. Ctr.*, 231 Ill. 2d 429, 435 (2008) ("[W]here a person who is not licensed to practice law in Illinois attempts to represent another party in legal proceedings, this rule permits dismissal of the cause, thereby treating the particular actions taken by that person as a nullity").

### C. Plaintiff's Patent Is Invalid and Should Not Have Been Granted.

The claims of U.S. Patent No. 11,937,745--***presumably*** being asserted by Plaintiff in this case (as the number of the asserted patent is notably absent from the face of the Complaint--are likely to be found invalid over the prior art. 35 U.S.C. §§ 102 and 103.

Although a U.S. patent normally enjoys a presumption of validity, the non-moving party in a TRO Motion may dispute this presumption by establishing the existence of a "substantial question" related to the invalidity of the patent. *See New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992). At the preliminary injunction (TRO) stage, the burden imposed on the non-moving party is merely to show "vulnerability" of the patent—not to establish the patent's "invalidity." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001) (noting that the non-moving party's burden requires less proof than the clear and convincing standard required at trial). Thus, an assertion of an invalidity defense that the moving party cannot show "lacks substantial merit" must result in the denial of any preliminary injunctive relief. *Titan Tire Corp.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009).

A patent claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference. *Celeritas Techs., Ltd. v. Rockwell Intern. Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998). A patent is obvious if a person of ordinary skill in the relevant art

would have been motivated to combine the teachings of one or more prior art references to achieve the claimed invention and would have had a reasonable expectation of success in doing so. *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1363 (Fed. Cir. 2018). A "motivation and reasonable expectation may be present where the claimed invention is the 'combination of familiar elements according to known methods' that 'does no more than yield predictable results.'" *PGS Geophysical*, 891 F.3d at 1363 (quoting *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415-16 (2007)).

The '745 Patent, having an effective filing of October 10, 2022, is directed to a "folding bathtub." The '745 Patent has fourteen claims total, of which only two are independent. As Plaintiff's currently-sealed TRO Motion is nothing more than a black box to Hangzhou, we have assumed for purposes of this Motion that Plaintiff asserted no more than one or both of the independent claims of the '745 Patent. However, both of the independent claims of '745 Patent are anticipated and/or rendered obvious by at least the following patents and patent applications: (1) U.S. Patent Application 17/020,591, filed on or about September 14, 2020, attached to the Li Decl. as **Exhibit A**; (2) Chinese Patent CN 215127782, filed on March 10, 2021, attached to the Li Decl. as **Exhibit B**; and (3) U.S. Patent Application 13/519,844, filed on March 11, 2011, attached to the Li Decl. as **Exhibit C**.[3] As established below, at least the '591 Patent anticipates the '754 Patent.

The first independent claim of '745 Patent, Claim 1, recites:

A folding bathtub, comprising:

---

[3] Hangzhou provides these prior art references as its preliminary defense to Plaintiff's infringement claims and reserves the right to rely on these and other prior art references in response to Plaintiff's specific infringement allegations in accord with the Local Patent Rules.

VP/#67008026.1

a tub body; and

a supporting ring, which is arranged on the tub body, wherein the supporting ring comprises a left ring part, a right ring part and an upper folding part; the left ring part and the right ring part are respectively arranged on two sides of an upper end of the tub body; the upper folding part is arranged between the left ring part and the right ring part;

the upper folding part is made of a soft material; the supporting ring achieves rotatable folding between the left ring part and the right ring part by means of deformation of the upper folding part; and the supporting ring is folded to drive the tub body to deform and be folded;

wherein an outer edge of the supporting ring is downwards folded to form a ring slot, a lower surface of the upper folding part is provided with a stopper; and the stopper is a stop block which is clamped in the ring slot.

'745 Patent, Col. 7, lines 22-40. As specifically noted by the U.S. Patent Examiner's in allowing the '745 Patent,

in independent claims 1 and 11, the inclusion of limitation, "wherein an outer edge of the supporting ring is downwards folded to form a ring slot, a lower surface of the upper folding part is provided with a stopper; and the stopper is a stop block which is clamped in the ring slot,' along with other claim language was not found or fairly taught by the prior art."

This limitation (which appears as the final "whereas" clause in both independent claims 1 and 10 (as issued)) was taken by the patent applicant from original dependent claim 8, as suggested by Patent Examiner. See Attachment A with excerpts from the Prosecution History of the '745 Patent.

Focusing primarily on U.S. Patent Application 13/519,844, filed on March 11, 2011 (**Exhibit C**) because it was not listed by the Patent Examiner in prosecution of the '745 Patent. And, thus, when the Patent Examiner allowed the '745 Patent because of the final whereas clause "along with other claim language [that] was not found or fairly taught by the prior art" the Examiner could not have been referring to the '844 patent application. In particular, the '844 patent application (also known as U.S. Patent Publication No. 2013/0198947 to Yeung), discloses that:

[0056] FIGS. 13 and 14 illustrate a third embodiment of the foldable bath tub in the present invention. . . . In order to provide improved strength for the foldable bath tub in its unfolding state, the foldable bath tub comprises two foldable supporting frames 500 a, 500 b on a lower surface of the panel 200, so that the foldable bath tub is prevented from being folded when pressed by external force during its unfolding state for usage. Specifically, the reference number 500 a refers to a front supporting frame provided at a front end of the foldable bath tub, while the reference number 500 b relates to a rear supporting frame provided at a rear end of the foldable bath tub. . . . When the foldable bath tub is unfolded, the two foldable supporting frames 500 a, 500 b are unfolded to support the panel 200 to improve the strength of the foldable bath tub and prevent the foldable bath tub from being folded during use. . . . .

[0057] In this embodiment, the two foldable supporting frames 500 a, 500 b have approximately similar structures. . . . Besides, the foldable supporting frame 500 a also comprises two connectors 540 in rotary connection with an upper end of the supporting legs 510, 520 correspondingly and in permanent connection with the lower surface of the panel 200. Referring to FIGS. 17 a-17 d, they are schematic views for the foldable supporting frame 500 a in which FIG. 17 a is a top view, FIG. 17 b is a front view, FIG. 17 c is a bottom view, and FIG. 17 d is a cross sectional view along line A-A. The supporting legs 510, 520 may be in rotary connection with the connector 540 by any common and suitable means. . . . .

[0058] In this embodiment, the connector 540 further has a U-shaped periphery 542. When the foldable supporting frame 500 a is unfolded, the supporting legs 510, 520 locate against a bottom 543 of the U-shaped periphery 542. An opening of the U-shaped periphery 542 makes the folded supporting legs 510, 520 lean below the panel 200. In order to keep the foldable supporting frames 500 a in an unfolding state and improve the safety of the foldable bath tub, . . . . .



Fig. 13

Fig. 14

Fig. 15a  Fig. 15b



Fig. 17a  Fig. 17b

Fig. 17c  Fig. 17d

10

The claim limitation that lead to the allowability of all of the claims of the '745 Patent is taught in the foregoing figures and associated description. In particular, Hangzhou believes that the "connector 540," which is placed into the downward fold of panel 200 is the same structure claimed in final whereas clause in the independent claims of the '745 Patent. A review of the '844 patent application will readily show that the remaining claim elements of the independent claims are also disclosed. As each limitation of the claims of the '745 Patent are either clearly described in at least this one piece of prior art (and to the extent any other limitations are not found in the '844 patent application they would have been obvious to one of ordinary skill in the art), all of the claims of the '745 Patent are anticipated (or at least obvious) and, thus, likely to be found invalid.

Because Hangzhou has a strong meritorious defense in challenging the validity of the patent, Plaintiff cannot establish a likelihood of success on the merits. For this additional reason, Plaintiff's TRO Motion should be denied.

### D. Plaintiff's Complaint Fails to State a Claim for Patent Infringement.

The allegations of Plaintiff's Complaint fail to include any substance as to how any of the defendants have allegedly infringed any of the claims of the '745 Patent. The only allegations that are potentially directed at this basic requirement may be buried in sealed Exhibit B. However, the summary explanations of sealed Exhibit B in the Complaint fail to suggest that any allegations regarding infringement are set forth therein. *See, e.g.*, Dkt. 1 ¶¶ 15, 20.

To state a plausible claim for relief, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell v. Twombly*, 550 U.S. 544, 555 (2007)).

To allege patent infringement, "although a plaintiff 'need not prove its case at the pleading stage' and 'is not required to plead infringement on an element-by-element basis,' it 'cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.'" *Golden v. Qualcomm Inc.*, 2023 U.S. App. LEXIS 26806, at *2-3 (Fed. Cir. 2023) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021)).

Here, Plaintiff does not appear to have provided claim charts demonstrating how any of the defendants' products have infringed, or even listed the elements of the claims which the defendants' products allegedly infringe. Instead, Plaintiff simply asserts in conclusory fashion that the defendants' products have "infringed the Asserted Patents" without more. *See, e.g.*, Dkt. 1 ¶¶ 15, 20. As such, Plaintiff has failed to state a claim for patent infringement and its whole suit should be dismissed under Fed. R Civ. P. 12(b)(6) and thus cannot support the issuance of any motion for injunctive relief, whatsoever.

## III. CONCLUSION

This Court should grant Hangzhou's emergency motion to intervene in this case. The aid Hangzhou has been able to provide to this Court is invaluable to ensuring the fair and appropriate administration of justice. As Hangzhou has been able to better inform this Court that:

(A) Plaintiff's sole reason for filing under seal and moving on an ex parte basis for a temporary restraining order is moot (i.e., to prevent Hangzhou and any other defendants from learning of these proceedings) given that Plaintiff already informed

12

Hangzhou of this action, stated that Hangzhou was named as a defendant on "sealed" Schedule A, and sent Hangzhou a copy of the complaint.

(B) Plaintiff has failed to state a plausible claim for relief in its Complaint,

(C) Plaintiff's asserted '745 Patent is likely to be found invalid, and

(D) Plaintiff's attorneys are engaged in the unauthorized practice of law,

Plaintiff's Motion to Seal and its ex parte motion for TRO should be denied and this action dismissed.

Dated this 2nd day of July, 2024.


VEDDER PRICE

*s/Jordan A. Sigale/*

Jordan A. Sigale
222 North LaSalle Street
Chicago, Illinois 60601
Phone: (312) 609-7560
Email: jsigale@vedderprice.com
*Attorneys for Intervening Defendant*

13

## CERTIFICATE OF SERVICE

On this day, I caused a true and correct copy of the foregoing document to be filed with the Court electronically. I caused the same to be served on the parties listed below via the Court's CM/ECF system.

Hao Ni
Texas Bar No. 24047205
hni@nilawfirm.com
Stevenson Moore
Texas Bar No. 24076573
Smoore@nilawfirm.com

NI, WANG & MASSAND, PLLC
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*Counsel for Plaintiff*

Dated this 2nd day of July, 2024.

s/ _____